UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 3:06-0924 |
| v. ) | Judge Echols |
| ) | |
| THE WILSON COUNTY SCHOOL ) | |
| SYSTEM, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiffs John and Jane Doe filed a Motion To Set Attorney's Fees (Docket Entry No. 136), to which Defendants Wilson County Board of Education, Wendell Marlowe, Janet Adamson and James M. Davis[1] responded in opposition (Docket Entry No. 138).

Following entry of the Court's Memorandum and Order on May 29, 2008 (Docket Entry Nos. 133 & 134), Plaintiffs claim to be the prevailing party under 42 U.S.C. § 1988. They seek payment of attorney's fees by Defendants for their lead counsel Edmund J. Schmidt III at the rate of $400 per hour for 385.40 hours, which results in a total award for him of $154,160.00. In addition, Plaintiffs seek payment of attorney's fees by Defendants for Tricia R. Herzfeld at the rate of $200 per hour for 99.0 hours, which results in a total award for her of $19,800.00. These two figures added together amount to a total of $173,960.00 in attorney's fees. Defendants do not

---

[1]Defendant James M. Davis is the current Director of Schools for Wilson County and he was substituted in place of the former Director of Schools, Dr. Jim Duncan. (Docket Entry No. 65, Order.)

1

challenge the hourly rates requested by the attorneys, but Defendants contend that certain hours or portions of hours billed by Plaintiffs' attorneys are excessive, duplicative, or unnecessary.

Plaintiffs seek to recover costs from Defendants in the total amount of $7,119.06. However, Plaintiffs did not file a Bill of Costs pursuant to 28 U.S.C. § 1920 as contemplated by Local Rule 54.01(a) and they have not justified any separate expenses recoverable under 42 U.S.C. § 1988.

## I. STANDARD OF REVIEW

Section 1988 authorizes the district court to award reasonable attorney's fees to prevailing plaintiffs in civil rights litigation. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); Wayne v. Village of Sebring, 36 F.3d 517, 531 (6th Cir. 1994). A prevailing plaintiff ordinarily should recover an attorney's fee unless special circumstances would render such award unjust. Id. "[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992). But once civil rights litigation materially alters the legal relationship between the parties, the degree of the Plaintiffs' overall success goes to the reasonableness of any fee award under Hensley. Id.

"If the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-792 (1989). "The touchstone of the prevailing party inquiry [is] the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Id. at 792-793. The plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant. Id. at 792. The relief must directly benefit the plaintiff at the time of the judgment. A plaintiff is not a prevailing party if the plaintiff's success

2

is purely technical or *de minimis*. DiLaura v. Township of Ann Arbor, 471 F.3d 666, 670 (6th Cir. 2006).

Once the Court determines that the party seeking attorney's fees is a "prevailing party," the next step is to determine what fee is "reasonable." Wayne, 36 F.3d at 531. The starting point is to multiply the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Id. This is known as the "lodestar" calculation. Id. In making this calculation, the Court must omit excessive, redundant, or otherwise unnecessary hours. Id. The sum reached must then be adjusted to reflect the results obtained. The Court must ask two questions: "'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" Id. (quoting Hensley). If the plaintiffs achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. Hensley, 461 U.S. at 436.

## II. ANALYSIS

Defendants do not dispute that Plaintiffs qualify as the prevailing party, but suggest that Plaintiffs' success was limited and their attorney's fee request should be reduced accordingly. Defendants point to the Court's award of "limited" permanent injunctive relief, as compared to the degree and scope of the broad injunctive relief the Plaintiffs sought in their Complaint. While Plaintiffs requested an injunction barring specific events and activities at Lakeview Elementary School on the ground that such events and activities were unconstitutional, the Court instead granted limited injunctive relief requiring Lakeview Elementary School to follow the relevant written policies concerning religious activities already adopted by the Wilson County Board of Education.

3

Defendants also contend that the Court held in part in favor of all individual Defendants against the Plaintiffs, and in complete favor of the Wilson County School system.

The Court acknowledges that the injunctive relief it imposed following the bench trial did not approach the breadth of the injunction that Plaintiffs requested. But as to liability the Plaintiffs prevailed on the central issue by proving that the school administration had become impermissibly entangled with the "Praying Parents" and the advancement of religion at Lakeview Elementary School. The Court did rule that some of the challenged activities were not in and of themselves unconstitutional, but in light of all the circumstances shown by the evidence, the Court ultimately held that the school administration's migration away from the school board's written policies on religion resulted in a violation of the First Amendment. The Court's injunction directed the Lakeview School administration to follow the school board's written policies, which contain standards and procedures for the equal treatment of all individuals and groups desiring access to Lakeview students and facilities, whether the motive for such access is religious or non-religious in nature.

Consequently, Plaintiffs were successful in achieving much of the benefit they sought in bringing suit, and they are entitled to an attorney's fee award. See Texas State Teachers Ass'n, 489 U.S. at 791-792. The Court's opinion materially altered the legal relationship of the parties in that the decision was intended to restore balance in the treatment of religious and non-religious individuals and groups seeking access to the Lakeview School. See id. at 792-793. The injunctive relief the Court ordered directly benefited the Plaintiffs upon entry of judgment because the Does can enroll their children at Lakeview School without fear that the school will again develop an improper entanglement with religion. Because of this, the Court finds that the Plaintiffs' success

4

was not purely technical or *de minimis*. See DiLaura, 471 F.3d at 670. The Plaintiffs prevailed on the constitutional issue and the level of success achieved makes the hours reasonably expended in obtaining that success a satisfactory basis for making a fee award. See Wayne, 36 F.3d at 531. Thus, the Court declines to reduce the requested attorney's fee award on the basis of limited success.

The Defendants next take issue with some of the hours billed. The Court will consider each point in turn. Sections A. through C. below pertain solely to the billing of Mr. Schmidt. Section D. below pertains solely to the billing of Ms. Herzfeld.

**A. Drafting the Complaint**

Defendants challenge 27.8 hours that Mr. Schmidt billed between September 21 and September 27, 2006 for drafting the Complaint. Mr. Schmidt billed 8.0 hours on September 20, 2006, for preparing, reviewing, and revising a draft Complaint. Defendants apparently believe the 8.0 hours was a sufficient amount of time to draft the Complaint considering Mr. Schmidt's given level of experience in Establishment Clause litigation.

The Complaint was twenty (20) pages in length and was highly factual in nature. The first ninety-one (91) paragraphs set forth the necessary allegations as to jurisdiction and venue, identification of the multiple parties, Plaintiffs' standing, and the facts of the case. Sixty-six (66) paragraphs were devoted to the factual allegations, explaining each of the events and activities challenged. The remaining twenty-five (25) paragraphs of the Complaint set out the cause of action and the requested relief.

Even considering that Mr. Schmidt has prior experience in drafting complaints in Establishment Clause cases, his prior cases likely would have been helpful only in drafting the sections on jurisdiction and venue and the constitutional cause of action. The remainder of the

5

Complaint concerned identifying the various parties in this case and setting forth the lengthy facts that would drive the constitutional analysis. Under Federal Rule of Civil Procedure 11, Mr. Schmidt carried the responsibility to be certain the Complaint was not being presented for any improper purpose, that his clients' claims were warranted under existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law, and that the factual contentions had evidentiary support or likely would have evidentiary support after a reasonable opportunity for further discovery.

Mr. Schmidt's time sheets indicate that not all of the challenged 27.8 hours were devoted simply to drafting the Complaint, even though drafting is in itself an extraordinarily important task. The contemporaneous time entries indicate that Mr. Schmidt also held conferences with his clients concerning the Complaint, he conducted research on the issues of standing and damages, he conducted research on the the Wilson County School System, and he sought the advice and feedback of his co-counsel and another individual. Mr. Schmidt also prepared the Complaint exhibits and a Motion for Protective Order. The Court finds that the 27.8 hours were justifiably billed, and the Court will not reduce the number of hours requested.

**B. Intervenors' Motion**

Defendants state that they took no position on the Motion to Intervene filed by Doug and Christy Gold and James and Jennifer Walker, and therefore the Defendants should not bear the cost of the hours Mr. Schmidt billed for opposing the intervention motion. Specifically, Defendants challenge Mr. Schmidt's time entries on December 20, 21, 23 and 26 of 2006.

These entries show that, on December 20, Mr. Schmidt received the Motion to Intervene, reviewed it and called his clients. The Motion to Intervene was two (2) pages long and included an

6

attached proposed Answer that was thirteen (13) pages long. Additionally, the Motion to Intervene was accompanied by the Affidavits of Jennifer Walker and Christy Gold, a total of six (6) pages, and a twenty-five (25) page Memorandum in support of the Motion. None of these page designations include case captions, signature blocks, or certificates of service. Because the Intervenors sought to enter the case as Intervenor-Defendants, these filings clearly impacted Plaintiffs' strategy of the case whether Defendants took a position on the intervention or not, and it was imperative for Mr. Schmidt to analyze the filings and promptly discuss them with his clients. Mr. Schmidt billed 2.0 hours on this date. The Court finds the billing was warranted.

On December 21, 2006, Mr. Schmidt billed 3.0 hours to review the Motion to Intervene in more depth, research the cases cited in the Memorandum and call his clients again. The Court finds that this billing was justified.

On December 22 and 23, 2006, Mr. Schmidt billed a total of 8.0 hours in researching legal opposition to the intervention. On December 26, 2006, Mr. Schmidt prepared, revised, and reviewed the Plaintiffs' opposition Memorandum in response to the Motion to Intervene. The Memorandum was seven (7) pages in length, cited numerous legal authorities and succinctly argued the Plaintiffs' position. Plaintiffs' response resisted the Motion to Intervene on the grounds that the proposed Intervenors did not have a substantial legal interest in the issues of the case and they could not demonstrate that the current representation in the case was inadequate to protect their interests. Mr. Schmidt billed 6.0 hours on December 26, but he also prepared Rule 26 disclosures that day. The Court finds that these billings, too, were justified.

7

## C. Trial Preparation

Defendants challenge two aspects of Mr. Schmidt's trial preparation. First, they contend that Mr. Schmidt should not have charged for trial preparation in May 2007, as the trial date was actually set for October 9, 2007, and trial ultimately did not occur until December 2007. Specifically, Defendants take issue with Mr. Schmidt's billings on May 4 through 6, 2006.

Mr. Schmidt's time entries show that he billed for "Review of materials to prepare for trial" for 6.0 hours on May 4, 6.0 hours on May 5, and 3.0 hours on May 6, 2007. Two telephone conferences with his clients were also included in the 6.0 hours billed on May 5 and the 3.0 hours billed on May 6. While the trial was then scheduled for October 9, 2007 (Docket Entry No. 31, Order), on April 30, 2007, Mr. Schmidt filed Plaintiffs' Motion To Set Hearing on Preliminary Injunction. (Docket Entry No. 42.) Mr. Schmidt likely began preparing on the assumption that the Court would set a hearing on the motion for preliminary injunction on short notice. Accordingly, the Court finds that the charges billed for Mr. Schmidt's "trial" preparation between May 4 and May 6, 2007, are justified.

Defendants also challenged the number of hours Mr. Schmidt billed for trial preparation in November and December 2007. They claim that the billing records lack appropriate specificity and the number of hours billed are excessive given the anticipated length of the bench trial. Specifically, Defendants point to Mr. Schmidt's billings on November 23, 25-28, and 30, 2007 and December 1-4 and 6, 2007.

The bench trial was held December 12 and 13, 2007. The Intervenors had received permission to intervene, so there were several parties and attorneys actively involved in the case as set for trial. Plaintiffs' Amended Witness List submitted to the Court on November 12, 2007

8

(Docket Entry No. 113) reflected that Plaintiffs intended to call five witnesses at trial–John and Jane Doe, Wendell Marlowe, Janet Adamson, and Jennifer Walker–and that Plaintiffs might call four more–Dr. Jim Duncan, Christy Gold, Neil Spencer and Eric Williams. Plaintiffs' Amended Exhibit List submitted on November 12, 2007, indicated that Plaintiffs planned to introduce twenty-eight (28) exhibits at trial. (Docket Entry No. 112.) Defendants' Amended Witness List showed that the Defendants intended to call four witnesses and might call seven (7) more, including the Plaintiffs. Defendants' Amended Exhibit List indicated that a number of exhibits would be introduced. (Docket Entry Nos. 114 & 115.) The Intervenors' Amended Witness List reflected that two (2) witnesses would definitely be called and seven (7) more might be called. The Intervenors also stated an intention to introduce eleven (11) exhibits. (Docket Entry Nos. 108 & 109.) Thus, while some of the same names and some of the same documents appeared on different lists, Mr. Schmidt still had to analyze how the trial testimony might vary depending upon which party called which witness and for what purpose. Strategically, the presentation of witness testimony was likely more complicated than it may appear at first blush.

At trial, ten different witnesses testified and four of them testified twice. Twenty (20) of Plaintiffs' exhibits, many of which had subparts, were admitted into evidence. Five (5) exhibits of the Defendants and Intervenor Defendants were admitted into evidence.

Mr. Schmidt's billing entries show that he billed for "Trial preparation" as follows: November 23, 8.0 hours; November 25, 4.0 hours; November 26, 10.0 hours; November 27, 7.0 hours; November 28, 3.5 hours; and November 30, 5.0 hours, for a total of 37.5 hours in late November 2007. The billing records also show that Mr. Schmidt billed 3.0 hours on December 1; 3.0 hours on December 2; 5.0 hours on December 3; 2.5 hours on December 4; and 6.0 hours on

9

December 6, for a total of 19.5 hours in early December. Mr. Schmidt also had a conference call with his clients during the 3.0 hours billed on December 2, 2007. Thus, Mr. Schmidt billed a total of 57.0 hours for trial preparation during the challenged time span.

In the days just prior to trial between December 7 and December 11, 2007, which Defendants do not challenge, Mr. Schmidt listed "trial preparation" on only one other day, December 8, 2007; otherwise he billed for telephone calls with opposing counsel and his clients, he met with opposing counsel to review exhibits, he identified and labeled exhibits, he reviewed a settlement proposal and met personally with his clients, and he reviewed and revised his trial notebook. Thus, the bulk of Mr. Schmidt's preparation for direct and cross-examination of witnesses, presentation of documentary evidence, trial motions, and other aspects of the trial occurred during the 57.0 hours Defendants challenge as excessive and lacking in specificity.

The Court finds that the billing entries for "trial preparation" are not so amorphous that the Court cannot surmise what Mr. Schmidt did with his time during the challenged period in late November and early December, especially when the Court considers the more specific billing entries for the days just prior to trial  The Court finds that the 57.0 hours for trial preparation were reasonably expended in preparation to handle ten (10) different witnesses in the presentation of numerous facts about a variety of activities and events that occurred at Lakeview School. Therefore, Defendants' challenge to these hours will be denied.

Mr. Schmidt's request to be paid $400.00 per hour for 385.40 hours reasonably expended on the litigation will be approved. This results in an attorney's fee award to him of $154,160.00.

10

**D. Excessive billings for e-mails and duplicative charges**

Turning to Ms. Herzfeld's billing statement, Defendants object to what they consider to be excessive billing for the receipt and transmission of emails and the inclusion of billing entries for tasks that appear to be duplicative of those handled by Mr. Schmidt.

Ms. Herzfeld, staff attorney for the American Civil Liberties Union of Tennessee and a co-counsel in the case, billed for reading and writing emails on numerous occasions. Defendants challenge the billings for sixty (60) of the emails on the ground that most all of them are entered for .20 hours, and this appears to be a standard charge without regard to the complexity of the matter discussed in the email.

All of the challenged emails passed between Ms. Herzfeld and Mr. Schmidt, except for five emails between Ms. Herzfeld and Neil Spencer, a witness, and one email from Ms. Herzfeld to outside counsel to secure declarations in support of the attorney's fee request. All but three (3) of the entries shows a standard .20 charge for receiving or sending an email, regardless of whether the billing entry indicated a simple request for information or a response to a request for information or a more substantive discussion of an issue in the case. On July 16, 2007, Ms. Herzfeld charged .40 for an "Email to Eddie re: settlement draft, edits and issues." On August 22, 2007, she charged .30 for an "Email to Eddie re: status of case, trial strategy, scheduling. On December 10, 2007, she charged .30 for an "Email from Eddie Schmidt re: conference call with judge, one day continuance, status of witnesses and settlement incl. my response to same."

Defendants also challenge Ms. Herzfeld's billings on February 5, 2007 and March 5, 2007 for reviewing the Complaint, Answers, discovery responses, and the Motion to Intervene. Defendants also contend they should not have to pay for Ms. Herzfeld's attendance at depositions

11

on May 7 & 8, 2007 and September 14, 2007, when she did not include time entries for preparing for those depositions and did not conduct or defend any depositions.

According to Ms. Herzfeld's Declaration, she joined the ACLU in Tennessee in January 2007, after this litigation was well underway. Thus, it appears that her billing for 1.80 hours to review the Complaint, Answers, discovery responses and the Motion to Intervene and its related filings was for the purpose of bringing her up to speed on the lawsuit. The Court finds that this charge should be deleted. Similarly, on March 5, 2007, Ms. Herzfeld billed .60 hours for "Receipt and Review of Discovery provided by Wilson County, Marlowe, Smith and Dr. Duncan." The same day she also billed .40 hours for "Review of Jane and John Doe's responses to discovery requests of Marlowe, Smith and [Adamson]." The billing records do not indicate whether discovery was occurring at this time and Ms. Herzfeld was assisting Mr. Schmidt in handling discovery, or whether these discovery events had occurred in the past and Ms. Herzfeld was simply looking over the discovery to become familiar with the lawsuit. Because the Plaintiffs have not shown that these charges are not duplicative of Mr. Schmidt's work, the Court will disallow 1.0 hour. These rulings result in a total of 2.80 hours being deducted from Ms. Herzfeld's billing statement.

The Court also reduces Ms. Herzfeld's billing statement by 8.7 hours which were charged for attending depositions on May 7, 2007 (2.10 hours), May 8, 2007 (5.10 hours), and September 14, 2007 (1.50 hours). The billing entries confirm that Ms. Herzfeld attended these depositions; the entries do not say that she conducted or defended them. Presumably Mr. Schmidt conducted and defended the depositions. Accordingly, to eliminate duplicative billing, the Court reduces the fee request by 8.7 hours.

12

The Court is aware that many lawyers have adopted minimum billing for receiving or sending emails, letters or phone calls, and lawyers bill additional time if a particular email, letter or phone call requires more attorney time than is captured in the standard minimum billing. Ms. Herzfeld's billing entries for 57 emails at .20 hour each indicate that some of the emails were more involved than others. Thus, the Court finds that a reduction is warranted to account for excessive billing at .20 hour when the transmission of the email did not require .20 hours. Multiplying 57 emails by .20 hour results in 11.4 hours spent on email transmissions. The Court reduces this figure by 3.0 hours to reach 8.4 hours allowed for receiving and sending emails related to the case.

Ms. Herzfeld's request to be paid $200.00 per hour for 99.0 hours will be granted in part and denied in part. The Court will reduce the requested 99.0 hours by 14.5 hours (2.80 hours for reviewing documents, 8.7 hours for attending depositions, and 3.0 hours for receiving and sending emails) for a total of 84.5 compensable hours. At $200.00 per hour, this results in an attorney's fee award to Ms. Herzfeld of $16,900.00.

Mr. Schmidt's attorney's fee of $154,160.00 added to Ms. Herzfeld's attorney's fee of $16,900.00 amounts to a total of $171,060.00 in approved attorney's fees under § 1988.

**E. Costs and expenses**

An itemized statement of litigation costs is attached to Mr. Schmidt's billing entries. He seeks reimbursement for the district court filing fee ($350.00), deposition transcripts ($1,485.20), trial transcript ($297.00), copy service ($393.74), process server ($150.00), and Westlaw legal research ($1,135.32), for a total of $3,811.26.

13

An itemized statement of litigation costs is also attached to Ms. Herzfeld's billing entries. She seeks reimbursement for parking costs incurred in attending discovery depositions ($22.00), expert witness/consultation fee including travel ($1,450.60), and deposition fees ($1,835.20).

Defendants have not addressed Ms. Herzfeld's request for reimbursement of costs. Except for the charges for Westlaw legal research, Defendants agree that the costs sought by Mr. Schmidt are allowable under 28 U.S.C. § 1920. Because Mr. Schmidt did not follow Local Rule 54.01(a) by filing a proper Bill of Costs with the Clerk, however, Defendants ask that Mr. Schmidt not be allowed to recover any of the allowable costs under § 1920. They rely on a case in the Eastern District of Michigan where the district court imposed such a bar. See DiLaura v. Ann Arbor Charter Twp., 2007 U.S. Dist. LEXIS 96963 at **9-10 (E.D. Mich. Dec. 6, 2007). Defendants also assert that the cost of computerized legal research is not recoverable under § 1920 and reimbursement for such research should not be awarded in any event because Mr. Schmidt has not offered any explanation of the specific research conducted, nor has he explained his customary practice and the general industry practice in the Middle District of Tennessee for billing such charges to clients. See Auto Alliance Int'l, Inc. v. United States Customs Serv., 155 Fed. Appx. 226, 229 (6th Cir. 2005).

Local Rule 54.01(a) requires that a Bill of Costs with supporting documentation be submitted to the Clerk of Court within thirty (30) days after entry of judgment. The Local Rule sets out a specific procedure that the claiming attorneys must follow, and the Rule also sets out a specific procedure the opposing attorneys must follow to object to any requested reimbursement by the prevailing party. Only after the Clerk has made a final determination of allowable costs pursuant to Local Rule 54.01(a) does the Court, on motion, review any objection to the Clerk's final determination.

14

The Court agrees with the Defendants that, with the exception of computerized legal research, the costs sought by Mr. Schmidt fall within the types of costs recoverable under § 1920. See King v. Gowdy, 268 Fed.Appx. 389, 391-392 (6th Cir. 2008). But the form of Plaintiffs' reimbursement request in this case illustrates why Local Rule 54.01(a) was adopted. Neither of Plaintiffs' attorneys submitted supporting documentation for their requests as required, and due to the lack of documentation, the Court is unable to determine whether any of the deposition costs Mr. Schmidt claims are included in the deposition costs Ms. Herzfeld claims, or whether there are two separate claimed amounts. The Court also cannot tell whether the copy service was utilized for "exemplification and copies of papers necessarily obtained for use in the case." See id. Plaintiffs did not call an expert to testify at trial, and Ms. Herzfeld did not provide the Court with any supporting information to justify the expense of a consulting expert. Neither attorney provided legal justification for awarding reimbursement for computerized legal research under § 1988.

The Court expects litigants to be familiar with this District's Local Rules and to follow them in all cases. While it is within the Court's discretion to deny costs based on failure to comply with Local Rule 54.01(a), it is also within the Court's discretion to consider a request for costs and expenses that does not comply precisely with the Local Rule. See King, 268 Fed.Appx. at 391-392 (remanding for district court in Eastern District of Michigan to consider an attorney's motion for costs and expenses made under § 1988 and separate those costs allowable under § 1920 from those recoverable under § 1988).

The Court will allow Plaintiffs' attorneys a short period of time to file a new motion, supported by proper documentation and legal argument, seeking reimbursement of allowable costs under § 1920 and allowable expenses under § 1988. Plaintiffs will not be permitted to seek any

15

additional attorney's fees incurred in preparing such a motion. The Court recognizes that Defendants may object to incurring any additional attorney's fees in responding to such a motion, and the Defendants may either file a response if desired or leave the matter in the Court's hands. If a response is filed, Plaintiffs will not be permitted to file a reply brief. The current request for expense reimbursement will be denied.

### III. CONCLUSION

The Court finds that Plaintiffs are the prevailing party and that they are entitled to reasonable attorney's fees. Pursuant to 42 U.S.C. § 1988, Mr. Schmidt may recover attorney's fees in the amount of $154,160.00, and Ms. Herzfeld may recover reduced attorney's fees in the amount of $16,900.00, for a grand total of $171,060.00 in approved attorney's fees.

Plaintiffs' attorneys failed to comply with Local Rule 54.01(a) in seeking costs under 28 U.S.C. § 1920, and they also did not justify separate litigation expenses that may be recoverable under 42 U.S.C. § 1988. The Court will exercise its discretion to permit Plaintiffs to file a motion seeking such reimbursements and Defendants will be given an opportunity to file a response. Plaintiffs' motion must be supported by specific documentation of the expenses incurred and Plaintiffs must provide a supporting legal memorandum justifying the requested reimbursements. Plaintiffs may not seek additional attorney's fees for preparing the motion, attachments, and legal memorandum. Upon receiving Plaintiffs' motion and Defendants' response, if any, the Court will rule on whether any costs and expenses will be awarded.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

16