**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| JOHN DOE, et al., | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | )   **No. 3:06-0924** |
| v. | )   **Judge Echols** |
| | ) |
| THE WILSON COUNTY SCHOOL | ) |
| SYSTEM, et al., | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM

Plaintiffs John and Jane Doe filed a Motion To Set Attorney's Fees (Docket Entry No. 136), to which Defendants Wilson County School System, Wendell Marlowe, Janet Adamson and James M. Davis[1] responded in opposition (Docket Entry No. 138).

Following entry of the Court's Memorandum and Order on May 29, 2008 (Docket Entry Nos. 133 & 134), Plaintiffs claim to be the prevailing parties under 42 U.S.C. § 1988. They request that Defendants be required to pay attorney's fees to Plaintiffs' lead counsel Edmund J. Schmidt III for 385.40 hours expended on the litigation at the rate of $400 per hour, which would result in a total award for Mr. Schmidt of $154,160.00. In addition, Plaintiffs ask that Defendants be required to pay attorney's fees to Plaintiffs' co-counsel Tricia R. Herzfeld for 99.0 hours expended on the litigation at the rate of $200 per hour, which would result in a total award for Ms. Herzfeld of $19,800.00.

---

[1]Defendant James M. Davis is the current Director of Schools for Wilson County and he was substituted in place of the former Director of Schools, Dr. Jim Duncan. (Docket Entry No. 65, Order.)

1

These two figures added together equal a grand total of $173,960.00 in attorney's fees. Plaintiffs also seek to recover costs from Defendants in the total amount of $7,119.06.

Defendants do not challenge the hourly rates requested by Plaintiffs' attorneys, but Defendants contend that certain hours or portions of hours billed by Plaintiffs' attorneys are excessive, duplicative, or unnecessary. They also challenge the total requested fee award on the ground that it is unreasonable in light of the limited success Plaintiffs achieved.

## I.  STANDARD OF REVIEW

Section 1988 authorizes the district court to award reasonable attorney's fees to prevailing plaintiffs in civil rights litigation. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); Wayne v. Village of Sebring, 36 F.3d 517, 531 (6th Cir. 1994). Plaintiffs may be considered "prevailing parties" if they "'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Hensley, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-279 (1st Cir. 1978)). According to the Supreme Court, "[t]his is a generous formulation that brings the plaintiff only across the statutory threshold[]" to obtain a fee award. Id. at 429. At a minimum, the plaintiffs must point to a resolution of the dispute which changes the legal relationship between the plaintiffs and the defendants, and the relief must directly benefit the plaintiffs at the time of the judgment. Texas State Teachers Assoc. v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-793 (1989). The prevailing party inquiry "does not turn on the magnitude of the relief obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992). The Court may consider, however, whether the plaintiffs' success on a legal claim was purely technical or de minimis, such that the Court would be justified in concluding that even the "generous formulation" of Hensley for obtaining prevailing party status and an award of fees has not been satisfied. Texas State Teachers Assoc., 489 U.S. at

2

792. Even prevailing parties may not be entitled to an attorney's fee award if "special circumstances would render such an award unjust." Hensley, 461 U.S. at 429.

"Once civil rights litigation materially alters the legal relationship between the parties, however, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award[.]" Farrar, 506 U.S. at 114. In fact, the most critical factor in deciding the reasonableness of an attorney's fee award is the degree of success obtained. Hensley, 461 U.S. at 436. In some cases, the plaintiffs' claims for relief will involve a common core of facts or will be based on related legal theories. "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." In this situation, the Supreme Court has counseled district courts not to view the suit as a series of discrete claims, but to focus instead on the significance of the overall relief obtained by the plaintiffs in relation to the hours reasonably expended on the litigation. Id. at 435.

Where an attorney has achieved excellent results for his clients, the attorney should recover a fully compensatory fee, which ordinarily will include all hours reasonably expended on the litigation. Id. In a case of exceptional success, an enhanced fee award may be appropriate. Id. "In these circumstances, where an attorney achieves excellent results for the plaintiffs, the fee award should not be reduced simply because the plaintiffs failed to prevail on every contention raised in the lawsuit." Id. This is because "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Id. (footnote omitted).

On the other hand, if an attorney achieves only limited or partial success for his clients, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate

may be an excessive amount." Id. at 436. This may be the case even if the plaintiffs' claims are interrelated, not frivolous, and raised in good faith. Id. "Again, the most critical factor is the degree of success obtained." Id. No precise formula for making the fee determination exists. Id. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment[]" in light of the relevant factors. Id. at 436-437.

In deciding the amount of a reasonable attorney's fee award, the Court begins with the "lodestar": the product of the number of hours reasonably expended in litigation multiplied by a reasonable hourly rate. Wayne, 36 F.3d at 531. In calculating the number of hours reasonably expended, the Court must exclude billed hours that are excessive, redundant, or otherwise unnecessary. Id. The Court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney. Id. at 533.

Once the proper lodestar figure is reached, the Court must then adjust the total to reflect the results obtained. Id. at 531. This requires the Court to consider two questions: "'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" Id. (quoting Hensley). The Sixth Circuit has "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed[.]" Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, 421 F.3d 417, 423 (6th Cir. 2005). The Court is not to reduce the attorney's fee award based on a simple ratio of successful claims to claims raised. Id. Rather, as Hensley teaches, the Court must focus on the

4

significance of the overall relief to the hours reasonably expended on the litigation. <u>DiLaura v. Township of Ann Arbor</u>, 471 F.3d 666, 673 (6th Cir. 2006).

## II. <u>ANALYSIS</u>

Defendants do not dispute that Plaintiffs qualify as prevailing parties who are entitled to an attorney's fee award. Defendants also do not identify any special circumstances that would render a fee award in this case unjust.

The Court must initially turn its attention to Defendants' contention that certain hours billed by Plaintiffs' attorneys are excessive, duplicative, or unnecessary. The Court must resolve these disputes first in order to determine the number of hours reasonably expended on the litigation for the purpose of calculating the lodestar figure. The Court will consider each point raised by the Defendants with regard to Mr. Schmidt and Ms. Herzfeld in Section A. The Court in Section B will consider the requested hourly rates, calculate the lodestar figure for each attorney, and add those amounts together to reach a grand total lodestar figure. In Section C the Court will explain its reasons for reducing the attorney's awards based on Plaintiffs' limited success. In Section D the Court will address Plaintiffs' request for costs and expenses.

### A. Challenges to reasonableness of billed hours

#### *1. Drafting the Complaint*

Defendants challenge 27.8 hours that Mr. Schmidt billed between September 21 and 27, 2006 for drafting the Complaint. Mr. Schmidt billed 8.0 hours on September 20, 2006, for preparing, reviewing, and revising a draft Complaint. Defendants suggest that 8.0 hours was a sufficient amount of time to draft the Complaint considering Mr. Schmidt's level of experience in Establishment Clause litigation.

5

The Complaint was twenty (20) pages in length and was highly factual in nature. The first ninety-one (91) paragraphs set forth the necessary allegations as to jurisdiction and venue, identification of the multiple parties, Plaintiffs' standing, and the facts of the case. Sixty-six (66) of these paragraphs were devoted to the factual allegations, explaining each of the events and activities challenged. The remaining twenty-five (25) paragraphs of the Complaint set out the First Amendment cause of action and the requested relief.

Even considering that Mr. Schmidt has prior experience in drafting complaints in Establishment Clause cases, his prior cases likely would have been helpful only in drafting the sections on jurisdiction and venue and the constitutional cause of action. The remainder of the Complaint was devoted to identifying the various parties in this case and setting forth the lengthy facts. Under Federal Rule of Civil Procedure 11, Mr. Schmidt carried the responsibility to be certain the Complaint was not presented for any improper purpose, that his clients' claims were warranted under existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law, and that the factual contentions had evidentiary support or likely would have evidentiary support after a reasonable opportunity for further discovery. Drafting a complaint is a very important task that understandably required more than eight (8) hours in a case like this one.

Additionally, Mr. Schmidt's time sheets indicate that not all of the challenged 27.8 hours were devoted only to drafting the Complaint. The contemporaneous time entries show that Mr. Schmidt also held conferences with his clients concerning the Complaint, he conducted research on the issues of standing and damages, he conducted research on the Wilson County School System, and he sought the advice and feedback of his co-counsel and another individual. Mr. Schmidt also

6

prepared the Complaint exhibits and a Motion for Protective Order. The Court finds that the 27.8 hours were justifiably billed, and the Court will not reduce the number of hours requested.

    *2. Intervenors' Motion*

Defendants state they took no position on the Motion to Intervene filed by Doug and Christy Gold and James and Jennifer Walker, and therefore, the Defendants should not bear the cost of the hours Mr. Schmidt billed for opposing the intervention motion. Specifically, Defendants challenge Mr. Schmidt's time entries for a total of 19.0 hours on December 20, 21, 23, and 26 of 2006.

The time entries show that, on December 20, Mr. Schmidt received the Motion to Intervene, reviewed it and called his clients. He billed 2.0 hours on this date. On December 21, 2006, Mr. Schmidt billed 3.0 hours to review the Motion to Intervene in more depth, research the cases cited in the supporting Memorandum and call his clients again. On December 22 and 23, 2006, Mr. Schmidt billed a total of 8.0 hours in researching legal opposition to the intervention. On December 26, 2006, Mr. Schmidt billed 6.0 hours for preparing, revising, and reviewing the Plaintiffs' opposition Memorandum in response to the Motion to Intervene. He also prepared Rule 26 disclosures on December 26, but the time entry does not specify what part of the 6.0 hours billed was devoted to the Rule 26 disclosures.

"A plaintiff can be awarded fees incurred opposing intervention if the defendant either joined the intervenor's motion or if the intervenor's acts were 'made necessary by [the defendant's] opposition to legitimate claims of the party seeking the award.'" Watson v. County of Riverside, 300 F.3d 1092, 1097 (9th Cir. 2002) (quoting Love v. Reilly, 924 F.2d 1492, 1495 (9th Cir. 1991)). As in Watson, neither of those circumstances is present here. Defendants did not take any position on the motion to intervene, and the Intervenor-Defendants' acts were not made necessary by

7

Defendants' opposition to legitimate claims of the Plaintiffs. The Intervenors entered the case as Defendants in an effort to assure their own interests were represented in the suit. Thus, the Court will not require Defendants to pay Plaintiffs for their attorney's fees incurred in responding to the motion to intervene. The Court will grant Plaintiffs 2.0 billable hours on December 26, 2006, for counsel's preparation of the Rule 26 disclosures. Thus, Mr. Schmidt's billing statement will be reduced by 17.0 hours.

### 3. Trial Preparation

Defendants challenge two aspects of Mr. Schmidt's trial preparation. First, they contend that Mr. Schmidt should not have charged for trial preparation in May 2007, as the trial date was actually set for October 9, 2007, and trial ultimately did not occur until December 2007. Specifically, Defendants take issue with Mr. Schmidt's billings on May 4 through 6, 2007.

Mr. Schmidt's time entries show that he billed for "[r]eview of materials to prepare for trial" for 6.0 hours on May 4, 6.0 hours on May 5, and 3.0 hours on May 6. Two telephone conferences with his clients were also included in the 6.0 hours billed on May 5 and the 3.0 hours billed on May 6. While the trial was then scheduled for October 9, 2007 (Docket Entry No. 31, Order), on April 30, 2007, Mr. Schmidt filed Plaintiffs' Motion To Set Hearing on Preliminary Injunction. (Docket Entry No. 42.) Mr. Schmidt likely began preparing on the assumption that the Court would set a hearing on the motion for preliminary injunction on short notice. Accordingly, the Court finds that the charges billed for Mr. Schmidt's "trial" preparation between May 4 and May 6, 2007, are justified.

Defendants also challenge the number of hours Mr. Schmidt billed for trial preparation in November and December 2007. They claim that the billing records lack appropriate specificity and

8

the number of hours billed are excessive given the anticipated length of the bench trial. Specifically, Defendants point to Mr. Schmidt's billings on November 23, 25-28, and 30, 2007 and December 1-4 and December 6, 2007.

The bench trial was held December 12 and 13, 2007. The Intervenor-Defendants had received permission to intervene in the case, so there were several parties and attorneys actively involved in the case as set for trial. Plaintiffs' Amended Witness List submitted to the Court on November 12, 2007 (Docket Entry No. 113) reflected that Plaintiffs intended to call five witnesses at trial–John and Jane Doe, Wendell Marlowe, Janet Adamson, and Jennifer Walker–and that Plaintiffs might call four more–Dr. Jim Duncan, Christy Gold, Neil Spencer and Eric Williams. Plaintiffs' Amended Exhibit List submitted on November 12, 2007, indicated that Plaintiffs planned to introduce twenty-eight (28) exhibits at trial. (Docket Entry No. 112.) Defendants' Amended Witness List showed that the Defendants intended to call four witnesses and might call seven (7) more, including the Plaintiffs. Defendants' Amended Exhibit List indicated that a number of exhibits would be introduced. (Docket Entry Nos. 114 & 115.) The Intervenor-Defendants' Amended Witness List reflected that two (2) witnesses would definitely be called and seven (7) more might be called. The Intervenor-Defendants also stated an intention to introduce eleven (11) exhibits. (Docket Entry Nos. 108 & 109.) Thus, while some of the same names and some of the same documents appeared on different lists, Mr. Schmidt was required to analyze how the trial testimony might vary depending upon which party called which witness and for what purpose. Strategically, the preparation for direct and cross-examination of witnesses was more complicated than it might appear at first blush.

At trial, ten (10) different witnesses testified and four (4) of them testified twice. Twenty (20) of Plaintiffs' exhibits, many of which had sub-parts, were admitted into evidence. Five (5) exhibits of the Defendants and Intervenor-Defendants were admitted into evidence.

Mr. Schmidt's billing entries show that he billed for "[t]rial preparation" as follows: November 23, 8.0 hours; November 25, 4.0 hours; November 26, 10.0 hours; November 27, 7.0 hours; November 28, 3.5 hours; and November 30, 5.0 hours, for a total of 37.5 hours in late November 2007. The billing records also show that Mr. Schmidt billed 3.0 hours on December 1; 3.0 hours on December 2; 5.0 hours on December 3; 2.5 hours on December 4; and 6.0 hours on December 6, for a total of 19.5 hours in early December. Mr. Schmidt also had a conference call with his clients during the 3.0 hours billed on December 2, 2007. Thus, Mr. Schmidt billed a total of 57.0 hours for trial preparation during the challenged time span.

In the billing entries for the days just prior to trial (between December 7 and December 11, 2007), which Defendants do not challenge, Mr. Schmidt listed "trial preparation" on only one other day, December 8, 2007; otherwise, in this pretrial time period, he billed for telephone calls with opposing counsel and his clients, he met with opposing counsel to review exhibits, he identified and labeled exhibits, he reviewed a settlement proposal and met personally with his clients, and he reviewed and revised his trial notebook. Thus, the bulk of Mr. Schmidt's preparation for direct and cross-examination of witnesses, presentation of documentary evidence, trial motions, and other aspects of the trial occurred during the 57.0 hours Defendants challenge as excessive and lacking in specificity.

The Court finds that the billing entries for "trial preparation" are not so amorphous that the Court cannot surmise what Mr. Schmidt did with his time during the challenged period in late

10

November and early December, especially when the Court considers the more specific billing entries for the days just prior to trial. The Court finds that the 57.0 hours for trial preparation were reasonably expended in preparation to handle ten (10) different witnesses in the presentation of numerous facts about a variety of activities and events that occurred at Lakeview School. Therefore, Defendants' challenge to these hours billed by Mr. Schmidt will be denied.

To summarize, the Court will cut 17.0 hours from Mr. Schmidt's bill for his work in preparing a response to the Intervenor-Defendants' Motion to Intervene. Otherwise, Defendants' challenges will be denied.

### 4. Excessive billings for e-mails and duplicative charges

Turning to Ms. Herzfeld's billing statement, Defendants object to what they consider to be excessive billing for the receipt and transmission of emails and the inclusion of billing entries for tasks that appear to be duplicative of those handled by Mr. Schmidt.

Ms. Herzfeld joined the American Civil Liberties Union of Tennessee in January 2007 as a staff attorney. As co-counsel in the case, Ms. Herzfeld billed for reading and writing emails on numerous occasions. Defendants challenge the billings for sixty (60) of the emails on the ground that most all of them are entered for .20 hours, and this appears to be a standard charge without regard to the complexity of the matter discussed in the email.

All of the challenged emails passed between Ms. Herzfeld and Mr. Schmidt, except for five emails between Ms. Herzfeld and Neil Spencer, a witness, and one email from Ms. Herzfeld to outside counsel to secure declarations in support of the attorney's fee request. All but three (3) of the entries show a standard .20 charge for receiving or sending an email, regardless of whether the billing entry indicated a simple request for information or a response to a request for information

11

or a more substantive discussion of an issue in the case. On July 16, 2007, Ms. Herzfeld charged .40 for an "Email to Eddie re: settlement draft, edits and issues." On August 22, 2007, she charged .30 for an "Email to Eddie re: status of case, trial strategy, scheduling. On December 10, 2007, she charged .30 for an "Email from Eddie Schmidt re: conference call with judge, one day continuance, status of witnesses and settlement incl. my response to same."

Defendants further challenge Ms. Herzfeld's billings on February 5, 2007 and March 5, 2007 for reviewing the Complaint, Answers, discovery responses, and the Motion to Intervene. Defendants also contend they should not have to pay for Ms. Herzfeld's attendance at depositions on May 7 & 8, 2007 and September 14, 2007, when she did not include time entries for preparing for those depositions and did not conduct or defend any depositions.

Having joined the ACLU in Tennessee in January 2007, after this litigation was well underway, it appears that Ms. Herzfeld's billing for 1.80 hours to review the Complaint, Answers, discovery responses and the Motion to Intervene in February 2007 was for the purpose of familiarizing herself with the lawsuit. The Court finds that this charge for 1.80 hours should be deleted.

Similarly, on March 5, 2007, Ms. Herzfeld billed .60 hours for "Receipt and Review of Discovery provided by Wilson County, Marlowe, Smith and Dr. Duncan." The same day she also billed .40 hours for "Review of Jane and John Doe's responses to discovery requests of Marlowe, Smith and [Adamson]." The billing records do not indicate whether discovery was occurring at this time and Ms. Herzfeld was assisting Mr. Schmidt in handling discovery, or whether these discovery events had occurred in the past and Ms. Herzfeld was simply looking over the discovery to become more familiar with the lawsuit. Because Ms. Herzfeld's billing entries do not include sufficient

specificity to show that these charges are not duplicative of Mr. Schmidt's work, the Court will disallow 1.0 hour. These rulings result in a deduction of 2.80 hours from Ms. Herzfeld's billing statement.

The Court also reduces Ms. Herzfeld's billing statement by 8.7 hours which were charged for attending depositions on May 7, 2007 (2.10 hours), May 8, 2007 (5.10 hours), and September 14, 2007 (1.50 hours). The billing entries confirm that Ms. Herzfeld attended these depositions; the entries do not say that she conducted or defended them. Presumably Mr. Schmidt conducted and defended the depositions. Accordingly, to eliminate duplicative billing, the Court reduces Ms. Herzfeld's fee request by 8.7 hours.

The Court is aware that many lawyers have adopted minimum billing for receiving or sending emails, letters or telephone calls, and lawyers bill additional time if a particular email, letter or phone call requires more attorney time than is captured in the standard minimum billing. Ms. Herzfeld's billing entries indicate that some of her emails were more involved than others, but 57 emails were billed at .20 hour each. Thus, the Court finds that a reduction is warranted to account for excessive billing at .20 hour when the composition and transmission, or the receipt and review, of the email did not require .20 hours. Multiplying 57 emails by .20 hour results in 11.4 hours spent on email transmissions. The Court reduces this figure by one-half to permit 5.7 hours for receiving and sending emails related to the case.

To summarize, the Court will reduce the number of hours billed for Ms. Herzfeld by 17.2 hours (2.80 hours for reviewing documents, 8.7 hours for attending depositions, and 5.7 hours for receiving and sending emails). This results in a total of 81.8 compensable hours.

The Court must also take into account that Ms. Herzfeld acted in the role of contact attorney for the ACLU and not as lead counsel who actually performed the lion's share of the work in handling the case through trial. Some of Ms. Herzfeld's billing entries reflect actual attorney work such as reviewing, commenting on, and editing legal memoranda and drafts of a settlement agreement. Ms. Herzfeld also handled the testimony of one witness during trial, Neil Spencer, and her billing entries for emails and meetings with him to prepare him for trial are appropriate. Further, Ms. Herzfeld participated in meetings to prepare the Does to testify and in meetings with opposing counsel concerning trial exhibits. After trial, Ms. Herzfeld was involved in drafting proposed findings of fact and conclusions of law, as well as the attorney's fee motion submitted to the Court.

On the other hand, Ms. Herzfeld billed for some tasks at an attorney hourly rate when the work is more appropriately considered to be paralegal in nature. For example, Ms. Herzfeld sent emails to Mr. Schmidt requesting the status of the case, and requesting or sending copies of documents. Ms. Herzfeld also sent or received emails about scheduling depositions or meetings. Ms. Herzfeld also served as Mr. Schmidt's liaison with the national office of the ACLU. The Court finds work done by Ms. Herzfeld that was paralegal in nature should not be paid at an attorney hourly rate, and an hourly rate adjustment is warranted for these hours. See Rhode Island Med. Soc. v. Whitehouse, 323 F.Supp.2d 283, 299 (D.R.I. 2004) (noting non-attorney tasks should not be billed at lawyer's rates, even if a lawyer performs them).

Having carefully reviewed Ms. Herzfeld's billing statement, the Court finds that ten percent (10%) of her billing entries, or 8.18 hours, involved tasks more appropriate for a paralegal than an attorney. Consequently, for these 8.18 hours, the Court will apply an hourly rate appropriate for a paralegal in the Nashville market.

14

## B. Hourly rates

### 1. Lead counsel Mr. Schmidt

Mr. Schmidt requests an hourly rate of $400.00. Mr. Schmidt attests that he is licensed to practice law in Tennessee and Louisiana. He obtained a Bachelor of Arts degree with honors from Vanderbilt University in 1980 and his law degree from Louisiana State University Law Center in 1984. He was admitted to the Louisiana bar in September 1984 and the Tennessee bar in July 2001. He is a member in good standing of both state bars since his dates of admission. Mr. Schmidt is admitted to practice before the Eastern, Western, and Middle Districts in Louisiana and the Fifth Circuit Court of Appeals. He is admitted to practice in the Middle and Eastern Districts of Tennessee and the Sixth Circuit Court of Appeals. He has served as a Louisiana Jefferson Indigent Defender, as General Counsel for the Louisiana Department of Agriculture, and as Senior Arbitrator for the Better Business Bureau. In 1998 Mr. Schmidt attended the three-week, invitation-only, Trial Lawyers College founded by Gerry Spence. Since 2007 he has served as a member of the teaching faculty of the Trial Lawyers College.

Since 1984, Mr. Schmidt has been engaged in private practice primarily in the area of civil litigation, and he has extensive trial experience. He represented plaintiffs in an Establishment Clause case in the Eastern District of Louisiana, New Orleans Secular Humanist Assoc., Inc. v. Bridges, No. 04-3165. He was successful in obtaining injunctive relief for his client, and he was awarded attorney's fees under § 1988 at the rate of $350.00 per hour. Mr. Schmidt's current hourly rate is $400.00 per hour. (Docket Entry No. 137-1, Schmidt Decl.)

15

### 2. Co-counsel Ms. Herzfeld

Ms. Herzfeld obtained a Bachelor of Arts degree from George Washington University in 1997 and her law degree from the George Washington University Law School in 2001. She was admitted to the Florida bar in November 2001 (now inactive), the West Virginia bar in January 2005 (now active, but not practicing), and the Tennessee bar in September 2007. She is a member in good standing of all three state bars since her admission.

Ms. Herzfeld served as an assistant public defender in Miami, Florida, and as a civil defense litigator in Charleston, West Virginia. She states she has significant trial experience and has tried over twenty (20) jury cases to verdict, as well as nearly eighty (80) bench trials. In her capacity as staff attorney for the ACLU in Tennessee, Ms. Herzfeld actively participates in ongoing federal civil rights litigation by conducting depositions, researching issues relating to constitutional law and civil litigation, drafting legal memoranda and conducting factual investigations into allegations of civil rights violations throughout the State. She has lectured at various events on issues relating to constitutional law and individual liberties. Ms. Herzfeld states that her current rate is $200 per hour, and Plaintiffs request that she be compensated at this rate in this case. (Docket Entry No. 137-2, Herzfeld Decl.)

### 3. Evidentiary support for requested hourly rates

In support of the request for an hourly rate of $400 for Mr. Schmidt and $200 for Ms. Herzfeld, Plaintiffs submit the declarations of George Barrett and Jerry Gonzalez, local attorneys. (Docket Entry Nos. 137-3 & 137-4.) Mr. Barrett states that he has practiced law in Nashville since achieving his law degree at Vanderbilt University in 1957. He is a founding member of the law firm Barrett, Johnston and Parsley in Nashville, and he has litigated many constitutional law matters in

this state. He is familiar with the fees charged by lawyers in the Middle District of Tennessee, and he is particularly familiar with the fees charged by experienced federal litigators handling civil rights litigation matters. In his opinion, a billing rate of $400 per hour is well within the range of fees charged by lawyers with over 20 years of federal litigation experience. Mr. Barrett also believes that a billing rate of $200 per hour is well within the range of fees charged by lawyers with seven years of experience for similar matters. Mr. Barrett is familiar with lawyers in the Middle District of Tennessee with less experience than these attorneys who charge higher rates in federal court cases.

Mr. Gonzalez is licensed to practice in Tennessee and Michigan, and he is admitted to practice before all Tennessee and Michigan state courts, the Middle District of Tennessee, the Sixth Circuit, and the U.S. Supreme Court. He has been admitted to the Michigan bar since 1996 and the Tennessee bar since 1997. He concentrates his law practice on federal criminal defense and civil rights, including actions against county governments under 42 U.S.C. § 1983 in which only injunctive relief is sought. In a case in this District, Staley v. Wilson County, No. 3:04-1127, Mr. Gonzalez obtained class certification and injunctive relief on a claim that Wilson County maintained an unconstitutional practice of setting bail. District Judge Aleta Trauger approved the parties' agreement that Mr. Gonzalez should be paid an attorney's fee of $35,000.00 for 88.2 hours of work. This equated to an hourly rate of $397 for Mr. Gonzalez. He currently seeks at least $350 an hour in civil rights cases. Mr. Gonzalez explains that attorneys who pursue plaintiffs' civil rights litigation face substantial risks that defense lawyers do not face in light of insurance defense contracts. While defense attorneys often argue that hourly rates of $150 to $175 are reasonable, in Mr. Gonzalez's opinion such rates do not account for the higher risk that plaintiffs' attorneys take.

17

*4.  Hourly rates set by the Court*

The hourly rate set by the Court must provide adequate compensation to attract competent counsel, yet avoid producing a windfall for the lawyers.  Geier v. Sundquist, 372 F.3d 784, 791(6th Cir. 2004).  "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record."  Id.  The Court has included these considerations in its analysis as well as the information about the Nashville market supplied by the declarations Plaintiffs provided.  The Court also relies on its own experience and knowledge of prevailing market rates in Nashville for federal civil rights litigation.  See Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005).  Finally, the Court has also considered the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The Court finds that an appropriate rate for Mr. Schmidt is $350 per hour.  Although Mr. Barrett charges $400 per hour and higher for federal civil rights litigation in this market, Mr. Barrett has practiced law in Nashville far longer than Mr. Schmidt and he has been involved in more federal civil rights cases than Mr. Schmidt.  Mr. Gonzalez achieved an hourly rate of $397 through an agreement of counsel in a particular civil rights case, and his current hourly rate is $350 per hour. The Court recognizes that Mr. Schmidt has more years of trial experience than Mr. Gonzalez, but

18

the Court believes that $350 per hour will adequately compensate Mr. Schmidt for his performance in this case, which the Court evaluated by observing Mr. Schmidt in the courtroom and by reviewing the pleadings and other papers Mr. Schmidt filed in the case.

Multiplying the approved 368.40 hours billed by Mr. Schmidt by an hourly rate of $350.00, the Court finds that the lodestar figure for Mr. Schmidt is $128,940.00.

The only support Plaintiffs provide for awarding Ms. Herzfeld $200 per hour is Mr. Barrett's opinion that such a rate is appropriate in this legal market for an attorney with seven years of experience. As discussed above, Ms. Herzfeld's participation in this case as a trial attorney was limited. While her billing records indicate that she may have participated to some extent in written discovery, summary judgment practice, settlement negotiations, and post-trial preparation of proposed findings of fact and conclusions of law, she clearly took a less visible role at trial than Mr. Schmidt. During the trial, Ms. Herzfeld handled the direct examination of one short witness. Her primary role in this case appears to have been her service as the Tennessee ACLU chapter's liaison with Mr. Schmidt and the national office of the ACLU.

The Court finds that Ms. Herzfeld's request for $200 per hour is slightly high considering the local legal market in Nashville for attorneys of similar trial experience and skill and taking into account Ms. Herzfeld's very recent focus on federal civil rights litigation. In light of all the factors and circumstances, the Court finds that an hourly rate of $185 is more appropriate for Ms. Herzfeld's billed attorney hours.

As explained earlier, the Court finds that some of Ms. Herzfeld's work on the case is more appropriately characterized as paralegal work than attorney work. Thus, for the hours the Court determined are akin to paralegal work, the Court finds $75 to be an appropriate hourly rate for a

19

paralegal in the Nashville market. See Bridgeport Music, Inc. v. Lorenzo, 255 F. Supp.2d 795, 800 (M.D. Tenn. 2003), aff'd sub nom. Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883 (6th Cir. 2004).

Thus, the lodestar figure for Ms. Herzfeld is $14, 233.20 (73.62 hrs. x $185.00 per hr. = $13,619.70 plus 8.18 hrs. at $75.00 per hr. = $613.50).

Combining the lodestar figure for Mr. Schmidt of $128,940.00 with the lodestar figure for Ms. Herzfeld of $14,233.20, the Court reaches a grand total lodestar of $143,173.20.

## C. Reduction for limited success

Defendants suggest that Plaintiffs' success was limited and their attorney's fee request should be reduced accordingly. Defendants point to the Court's award of "limited" permanent injunctive relief, as compared to the degree and scope of the broad injunctive relief the Plaintiffs sought in their Complaint. While Plaintiffs requested an injunction barring specific events and activities from taking place at Lakeview Elementary School on the ground that such events and activities were unconstitutional, Defendants emphasize that the Court granted only limited injunctive relief requiring Lakeview Elementary School to follow the relevant written policies concerning religious activities already adopted by the Wilson County Board of Education. Defendants further contend that the Court held in part in favor of all individual Defendants against the Plaintiffs, and in complete favor of the Wilson County School System.

The Court agrees with the Defendants that a reduction in the lodestar fee amounts reached for Mr. Schmidt and Ms. Herzfeld is necessary to account for the Plaintiffs' limited success at trial. See Granzeier v. Middleton, 173 F.3d 568, 577 (6th Cir. 1999) (affirming reduced award in Establishment Clause case where plaintiffs achieved limited injunctive relief). The Court has

20

determined that Plaintiffs' attorneys together devoted 450.20 hours to this litigation. The Court may not reduce the attorney's fee award based on a simple ratio of successful claims to claims raised. Rather, the Court must focus on the significance of the overall relief to the hours reasonably expended on the litigation. DiLaura, 471 F.3d at 673.

At trial, Plaintiffs proved by a preponderance of the evidence that Lakeview School administrators and some teachers had become impermissibly entangled with a group known as the "Praying Parents" and this entanglement resulted in the improper advancement of religion at Lakeview School in violation of the First Amendment. Plaintiffs asked the Court to impose a permanent injunction that would, among other things, ban the "Praying Parents" from meeting at Lakeview School, especially during school hours; ban the "Praying Parents" from access to the school teachers' lounge, classrooms and hallways during school hours; ban the "Praying Parents" from sending home flyers about their meetings and activities in student folders; ban the Parent-Teacher Organization ("PTO") from including religious articles and logos in the group's newsletters; ban school endorsement of religious activities, contests and promotional posters and stickers; prohibit kindergarten teachers from including a Pilgrims' prayer in the Thanksgiving unit; and prohibit the inclusion of a nativity scene at the end of the kindergarten Christmas program presented after school hours by the PTO.

The Court ruled that some of the challenged activities, such as "See You At The Pole,"™ the National Day of Prayer, the kindergarten Christmas program, and the Thanksgiving prayer, were not in and of themselves unconstitutional, but in light of all the circumstances, Plaintiffs proved that the Lakeview School administration was not following the school board's written policies on religious activities in the schools, and this resulted in a First Amendment violation. The Court's

21

limited permanent injunction directed the Lakeview School administration to follow the school board's written policies, which contain standards and procedures for the equal treatment of all individuals and groups desiring access to Lakeview students and facilities, whether the motive for such access is religious or non-religious in nature. The Court also imposed certain restrictions on the continued use of the nativity scene in the Christmas program and continued inclusion of a Thanksgiving prayer.

Plaintiffs succeeded in changing the legal relationship that existed between them, the Defendants, and the Intervenor-Defendants, making Plaintiffs prevailing parties under § 1988. The injunctive relief the Court imposed in Plaintiffs' favor, however, did not approach the breadth of the permanent injunction the Plaintiffs sought. Thus, for the purpose of making an attorney's fee award, the Court finds that Plaintiffs achieved limited success.

The Court cannot easily parse the attorneys' billing statements to identify specific hours that should be eliminated to account for Plaintiffs' limited success. See Hensley, 461 U.S. at 436-437. Nonetheless, under Hensley, the Court may exercise its equitable discretion to simply reduce the lodestar award to account for the limited success. Id.

Considering the significance of the overall relief achieved by Plaintiffs to the 450.2 hours the Court finds were reasonably expended on the litigation, the Court determines that each attorney's lodestar figure should be reduced by thirty percent (30%) to account for the limited success. Thus, Mr. Schmidt is entitled to $90,258.00 in fees and Ms. Herzfeld is entitled to $9,963.24 in fees, for a grand total of $100,221.24 in § 1988 attorney's fees.

### D. Costs and expenses

An itemized statement of litigation costs is attached to Mr. Schmidt's billing entries. He seeks reimbursement for the district court filing fee ($350.00), deposition transcripts ($1,485.20), trial transcript ($297.00), copy service ($393.74), process server ($150.00), and Westlaw legal research ($1,135.32), for a total of $3,811.26.

An itemized statement of litigation costs is also attached to Ms. Herzfeld's billing entries. She seeks reimbursement for parking costs incurred in attending discovery depositions ($22.00), expert witness/consultation fee including travel ($1,450.60), and deposition fees ($1,835.20).

Defendants have not addressed Ms. Herzfeld's request for reimbursement of costs. Except for the charges for Westlaw legal research, Defendants agree that the costs sought by Mr. Schmidt are allowable under 28 U.S.C. § 1920. Because Mr. Schmidt did not follow Local Rule 54.01(a) by filing a proper Bill of Costs with the Clerk, however, Defendants ask that Mr. Schmidt not be allowed to recover any of the allowable costs under § 1920. They rely on a case in the Eastern District of Michigan where the district court imposed such a bar. See DiLaura v. Ann Arbor Charter Twp., 2007 U.S. Dist. LEXIS 96963 at **9-10 (E.D. Mich. Dec. 6, 2007). Defendants also assert that the cost of computerized legal research is not recoverable under § 1920 and reimbursement for such research should not be awarded in any event because Mr. Schmidt has not offered any explanation of the specific research conducted, nor has he explained his customary practice and the general industry practice in the Middle District of Tennessee for billing such charges to clients. See Auto Alliance Int'l, Inc. v. United States Customs Serv., 155 Fed. Appx. 226, 229 (6th Cir. 2005).

Local Rule 54.01(a) requires that a Bill of Costs with supporting documentation be submitted to the Clerk of Court within thirty (30) days after entry of judgment. The Local Rule sets out a

specific procedure that the claiming attorneys must follow, and the Rule also sets out a specific procedure the opposing attorneys must follow to object to any requested reimbursement by the prevailing party. Only after the Clerk has made a final determination of allowable costs pursuant to Local Rule 54.01(a) does the Court, on motion, review any objection to the Clerk's final determination.

The Court agrees with the Defendants that, with the exception of computerized legal research, the costs sought by Mr. Schmidt fall within the types of costs recoverable under § 1920. See King v. Gowdy, 268 Fed.Appx. 389, 391-392 (6th Cir. 2008). But the form of Plaintiffs' reimbursement request in this case illustrates why Local Rule 54.01(a) was adopted. Neither of Plaintiffs' attorneys submitted supporting documentation for their requests as required, and due to the lack of documentation, the Court is unable to determine whether any of the deposition costs Mr. Schmidt claims are included in the deposition costs Ms. Herzfeld claims, or whether there are two separate claimed amounts. The Court also cannot tell whether the copy service was utilized for "exemplification and copies of papers necessarily obtained for use in the case." See id. Plaintiffs did not call an expert to testify at trial, and Ms. Herzfeld did not provide the Court with any supporting information to justify the expense of a consulting expert. Neither attorney provided legal justification for awarding reimbursement for computerized legal research under § 1988.

The Court expects litigants to be familiar with this District's Local Rules and to follow them in all cases. While it is within the Court's discretion to deny costs based on failure to comply with Local Rule 54.01(a), it is also within the Court's discretion to consider a request for costs and expenses that does not comply precisely with the Local Rule. See King, 268 Fed.Appx. at 391-392 (remanding for district court in Eastern District of Michigan to consider an attorney's motion for

24

costs and expenses made under § 1988 and separate those costs allowable under § 1920 from those recoverable under § 1988).

Plaintiffs' attorneys will be given a short period of time to file a new motion, supported by proper documentation and legal argument, seeking reimbursement of costs under § 1920 and expenses under § 1988. Plaintiffs will not be permitted to seek any additional attorney's fees incurred in preparing such a motion. The Court recognizes that Defendants may object to incurring any additional attorney's fees in responding to such a motion, and the Defendants may either file a response if desired or leave the matter in the Court's hands. If a response is filed, Plaintiffs will not be permitted to file a reply brief. The current request for expense reimbursement will be denied.

## III. CONCLUSION

The Court finds that Plaintiffs are the prevailing parties and they are entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988. The Court will reduce Mr. Schmidt's bill by 17.0 hours for his work in preparing a response to the Intervenor-Defendants' Motion to Intervene. Otherwise, the Court approves Mr. Schmidt's billing for 368.40 hours. Although Mr. Schmidt requests an hourly rate of $400, the Court finds that $350 is a more appropriate hourly rate for Mr. Schmidt. Multiplying 368.40 approved hours by an hourly rate of $350, the Court finds that the lodestar figure for Mr. Schmidt is $128,940.00. This lodestar figure is reduced by 30% to account for the Plaintiffs' limited success. The final attorney's fee award for Mr. Schmidt is $90,258.00.

The Court will reduce the number of hours billed by Ms. Herzfeld by 17.2 hours (2.80 hours for reviewing documents, 8.7 hours for attending depositions, and 5.7 hours for receiving and sending emails). This reduction results in a total of 81.8 hours. Although Ms. Herzfeld requests an hourly rate of $200, the Court finds that $185 is a more appropriate hourly rate for attorney work

25

performed by Ms. Herzfeld. The Court further finds that 10% of Ms. Herzfeld's billing entries, or 8.18 hours, involved tasks more appropriate for a paralegal than an attorney. The Court will apply a lower hourly rate of $75.00 for 8.18 hours. Thus, the lodestar figure for Ms. Herzfeld is $14,233.20 ((73.62 hrs. x $185.00 per hr. = $13,619.70) plus (8.18 hrs. at $75.00 per hr. = $613.50)). This lodestar figure is reduced by 30% to account for the Plaintiffs' limited success. The final attorney's fee award for Ms. Herzfeld is $9,963.24.

Thus, Plaintiffs are awarded a grand total of $100,221.24 in § 1988 attorney's fees.

Plaintiffs' attorneys failed to comply with Local Rule 54.01(a) in seeking costs under 28 U.S.C. § 1920, and they also did not justify separate litigation expenses that may be recoverable under § 1988. Thus, the current request for expense reimbursement will be denied. The Court will exercise its discretion to permit Plaintiffs to file a motion seeking such reimbursements and Defendants will be given an opportunity to file a response. There will be no reply.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE